Handal & Morofsky, LLC
Anthony H. Handal (AH5104, handal@handalglobal.com)
Tim Bukher (TB1984, bukher@handalglobal.com)
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: (646) 770-1010
Fax: (646) 349-2366
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

HEPTAGON CREATIONS, LTD.,                   :
                                            :
                        Plaintiff,          :          Civil Action No. 11-cv-01794-LTS
            v.                              :
                                            :
CORE GROUP MARKETING LLC,                   :
PLESKOW & RAEL CORPORATION,                 :
and THOMAS RAEL,                            :
                                            :
                        Defendants.         :

------------------------------------------------------X

## FIRST AMENDED COMPLAINT

Plaintiff, Heptagon Creations, Ltd, by and through its undersigned attorneys, alleges as its

Complaint:

## NATURE OF THE ACTION

1.      This is a civil action arising under the laws of the United States, specifically under

15 USC § 1125(a) (§ 43(a) of the Lanham Act) for unfair competition, trade dress infringement,

and common law unfair competition and 17 USC § 501 for copyright infringement.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 15 USC § 1121 (actions

1

arising under the Lanham Act), 28 USC § 1331 (actions arising under the laws of the United States), 28 USC § 1338(a) (acts of Congress relating to copyrights and trademarks), and 28 USC § 1338(b) (civil actions asserting a claim of unfair competition).

3.      This Court has personal jurisdiction over all named defendants. On information and belief, all named defendants have conducted acts of infringement and unfair competition in this District by directing sales which infringe upon Plaintiff's rights to this District and by conducting regular business in this District.

4.      Venue is proper in this District pursuant to 28 USC 1391(b) and 28 USC 1400(b). Defendants reside in this district, are subject to personal jurisdiction in this district and the acts complained of herein took place within this District, moreover, Defendants have committed acts of infringement in this District and conduct regular business in this District.

<u>**THE PARTIES**</u>

5.      Plaintiff Heptagon Creations, Ltd. (hereinafter "Heptagon") is a New York corporation with its principal place of business located at 20 Van Dam Street, Brooklyn, New York 11222, and is in engaged in the business of designing and marketing high-end custom home furnishings and providing architectural  services, namely,  interior design services, which are typically provided to clients in the course of providing furniture to them.

6.      Upon information and belief, Defendant Core Group Marketing LLC (hereinafter "Core") is a New York corporation with a place of business and corporate offices at 417 Fifth Avenue, 9th Floor, New York, New York 10016, and is engaged in the business of rendering high-end real-estate brokerage, marketing and a variety of marketing related services  in this District.

2

7.    Upon information and belief, Defendant Pleskow & Rael Corporation (hereinafter "Pleskow") is a California corporation with a place of business and corporate offices at 17 Park Place, 2nd Floor, New York, New York 10007, and is engaged in the business of architectural and interior design services.

8.    Upon information and belif, Defendant Thomas Rael (hereinafter "Rael") is a managing partner and principal of Pleskow, with offices at 17 Park Place, 2nd Floor, New York, New York 10007.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.    Heptagon is in the business of designing and creating high-end, distinctly unique custom furniture which it has successfully marketed under the ANDRÉ JOYAU trade name since the year 2000 and has featured products in such notable tradeshows as BKLYN Designs, Designers & Agents, Gallery 13, and Architectural Digest Home Show.

10.    Heptagon's ANDRÉ JOYAU brand furniture and the various items of furniture sold under the mark are famous worldwide for their distinct design features and overall quality of style, as furniture and as works of art. Customers and endorsers of ANDRÉ JOYAU furniture include such personalities as fashion designer Donna Karan, television personalities Thom Filicia and Alina Cho, film director Sydney Pollack, and sculptor Joel Perlman. Corporate clients who have contracted with Heptagon to decorate their offices include Playboy Magazine and ABKCO Music & Records, Inc. In 2007, Heptagon was commissioned to utilize the iconic ANDRÉ JOYAU style to contribute to the design and decoration of the First Class Lounge for Korean Air at the Los Angeles International Airport (LAX). On November 20, 2003, Heptagon was invited by the Central Park Conservancy to design iconic ANDRÉ JOYAU benches for auction to help

3

raise money for the restoration and management of the New York Central Park; the auction reception was held at Christie's and featured artistic furniture works by many other famous designers.

11.     The ANDRÉ JOYAU furniture line has been featured in major general interest magazines such as the *Hamptons Magazine* Art Section (*see* Exhibit 1 p.1). *City Magazine* describes the furniture as an artistic work which fits "beautifully within [Donna Karan's] concept of Urban Zen," noting that the ANDRÉ JOYAU collection is showcased in the Donna Karan store (*see* Exhibit 1 p.2). The ANDRÉ JOYAU furniture line has also been featured in major publications including *Elle Decor*, *Interior Design*, *House & Garden*, *Metropolis*, *Midwest Home*, *New York Spaces*, and *World of Interiors* (*see* Exhibit 2).

12.     In addition to general commercial and residential interior design, the iconic ANDRÉ JOYAU furniture style has been commissioned by owners of condominium buildings to design and decorate the spaces in such buildings, thereby lending the goodwill of the ANDRÉ JOYAU style to help increase the value and sales of such buildings' residential properties. For example, in May 2010 Heptagon was commissioned to decorate the Columbia Hicks Condominium development. Upon information and belief, Heptagon's stylistic contribution to the space helped the Columbia Hicks Condominium substantially increase the sale of its development properties.

13.     In August 2010, acting as an agent for Core, Rael approached Heptagon in order to broker a deal on behalf of Core to convince Heptagon to lend to Core a collection of ANDRÉ JOYAU furniture in exchange for the publicity and exposure it would give the brand and the work. Core intended to use such furniture to decorate certain condominiums with iconic ANDRÉ

4

JOYAU furniture, thereby associating the considerable goodwill of the furniture collection with the condominiums. The decorated condominiums would then be featured on the Home and Garden Television ("HGTV") show "Selling New York," which follows Core and other major real-estate brokerage firms as they employ various creative strategies to sell high-end real-estate in and around the New York City area.

14.     Upon information and belief, in approaching Heptagon on Core's behalf, Rael was acting both as an agent for Core and in his capacity as a managing partner and principal of Pleskow which, upon information and belief, was hired by Core to provide interior decorating solutions to increase the appeal of Core's real-estate listings.

15.     Heptagon was initially amenable to Core's offer to feature the ANDRÉ JOYAU furniture on a nationally syndicated television show and provided Rael with photographs of the ANDRÉ JOYAU furniture upon the false representation that such photographs would help Core select the furniture pieces that it intended to feature in the show.

16.     As a condition to lending its furniture, Heptagon required Core to purchase an insurance policy for the furniture works involved. Core ultimately refused to purchase such policy and Heptagon, therefore, refused to lend its furniture to Core.

17.     After refusing to participate in Core's project, Heptagon received over a dozen telephone calls from Rael and from Michael Graves, an employee and real-estate agent at Core ("Graves"), who tried to convince Heptagon to deliver the ANDRÉ JOYAU furniture without the requisite insurance policy. Ultimately, Heptagon refused to participate in the project without the insurance policy.

18.     On January 13, 2011, HGTV premiered an episode of "Selling New York" titled

5

"Getting the Buy In! NYC Brokers must get creative to market their unique listings: A Private Island Home and Place With Potential" (the "HGTV Episode"). The HGTV Episode featured Core, among other real-estate companies, as it sought to sell a high-end condominium at 240 Park Avenue South, listed at a price of five million nine hundred and fifty thousand dollars ($5,950,000.00) (the "Park Avenue Property"). The show disclosed a potential sales commission for Core of three hundred and fifty seven thousand dollars ($357,000.00). The HGTV Episode was re-aired on January 30, 2011 at 2:30 PM EST, February 14, 2011 at 9:00 PM EST, and February 14, 2011 at 12:00 AM EST.

19.     Throughout the HGTV Episode, Core agent Graves is guided and advised by Shaun Osher, the founder and CEO of Core ("Osher"), as he pursues various strategies to market the Park Avenue Property, make it more appealing for potential buyers, and to ultimately sell it on behalf of Core.

20.     At one point in the HGTV Episode, Graves and Osher admit the fact that the unfurnished Park Avenue Property was not as appealing to potential buyers and they devise a plan to alter the value of the Park Avenue Property and make it  more appealing, but without purchasing ANDRÉ JOYAU's furniture . This was done by creating virtual, fully furnished images of the Park Avenue Property rooms and screening the images of ANDRÉ JOYAU's furniture onto the walls of the Park Avenue Property transforming the apartment into an ANDRÉ JOYAU work of art (the "Sales Presentation"). The Sales Presentation  was made to a group of potential buyers and members of the media who viewed an enhanced version of the Park Avenue Property and were presented with an enhanced and prestigious representation of Defendants' businesses, as a result of the association with ANDRÉ JOYAU, ANDRÉ JOYAU's reputation

and ANDRÉ JOYAU's artistic work.

21.     While it was Core's original stated  intention to physically furnish the Park

Avenue Property with ANDRÉ JOYAU furniture for presentation to buyers, such idea was not

possible when defendants refused to cover the insurance costs of  the project. Apparently, in lieu

of using Heptagon's physical furniture, or the furniture and the images, Core, Rael and Pleskow

undertook to infringe on Heptagon's trade dress and goodwill in the ANDRÉ JOYAU furniture

line by creating virtual images of the Park Avenue Property rooms to display as part of Core's

Sales Presentation and furnishing such rooms entirely with 3D virtual constructs of ANDRÉ

JOYAU artistic creations which were, upon information and belief, rendered by Rael and

Pleskow from the photographs of the ANDRÉ JOYAU furniture which were provided to Rael in

August 2010.

22.     The HGTV Episode concludes with Core successfully selling the Park Avenue

Property for a price of five million eight hundred and ninety thousand dollars ($5,890,000.00)

and, upon information and belief, earning Core a commission of three hundred fifty three

thousand four hundred dollars ($353,400.00).

## COUNT ONE

## <u>UNFAIR COMPETITION AND TRADE DRESS INFRINGEMENT</u>

23.     As a cause of action and ground for relief, Heptagon alleges and incorporates by

reference Paragraphs 1 through 22 of this Complaint as a part of this Count.

24.     On the video recording of the  HGTV Episode Core admits that "the [virtual Sales

Presentation] allows [them] to show the potential of [the Park Avenue Property]" and that it

allowed them to do so "without wasting any money along the way." The virtual Sales

7

Presentation featured the following distinctive and well known artistic creations of ANDRÉ JOYAU furniture: Cocoon Chair, Cross Table, Form Table, Meshu Floor Lamp, Shimne Vase, Sylvan Floor Lamp, Yasu Floor Lamp, Z Stool, and Tate Chaise (*see* Exhibits 3, 4, 5 and 6).

25.     Taken as a whole, the ANDRÉ JOYAU furniture collection features a "modern repurposed" style which is an artistic repurposing of objects found in nature into a fusion of modern minimalist and nature-themed home furnishings and has achieved an excellent reputation with the public for design excellence and quality and is known by the public to originate with plaintiff. Additionally, this distinctive style of line has acquired secondary meaning and is associated with the ANDRÉ JOYAU trade name,  all of this is  by virtue of considerable media attention (*see* Exhibits 1 and 2), as well as its celebrity clientele and endorsements. In addition to the inherently distinctive overall style of the ANDRÉ JOYAU furniture collection, each separate piece of the collection, as detailed *infra*, bears its own inherently distinctive trade dress which is associated with Heptagon, and which has been infringed by defendants and/or used by defendants to unjustly profit from the same.

26.     The inherently distinctive Cocoon Chair is a low-sitting chair with a back and seat of soft, white material designed to emulate the color and texture of spider's silk. The chair's back and seat are surrounded from the bottom and sides by the hollowed-out cross-section of a tree trunk which forms a "cocoon" of granular wood around the seating area. The chair's textured seating material and tree trunk cocoon siding represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 7). The presentation of the Park Avenue Property  featuring the Cocoon Chair is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU  because Defendants' infringing recreation

thereof substantially misappropriates the original artistic creation (*see* Exhibit 3).

27.     The inherently distinctive Cross Table is a low-sitting stool or table composed of splintered, unfinished wooded pieces which form a cross perpendicular to the ground and where the four quadrants of the cross are filled at the top with splintered, unfinished wooden blocks to form a flat area suitable for sitting or placing objects. The splintered, unfinished wood of the Cross Table represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 8).  The presentation of the Park Avenue Property  featuring the Cross Table is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates the original artistic creation (*see* Exhibit 4).

28.     The inherently distinctive Form Table is a low-sitting table featuring a top composed of two splintered, unfinished wooded pieces formed from cross-sections of a sycamore tree trunk. The round wooden pieces join together to form a "figure eight" table top. The round, tree-cross-section pieces have been cut so as to create an uneven impression at the sides where the sides of the table top never form an angle perpendicular to the floor. The splintered, unfinished wooden texture and uneven, "chaotic" feel of the table top siding represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 9). The presentation of the Park Avenue Property  featuring the Form Table is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates the original artistic creation (*see* Exhibit 3).

29.     The inherently distinctive Meshu Floor Lamp is a long, vertical lamp with the

9

lamp shade bottom starting a few inches from the floor and rising to the top of the lamp several feet above. The lamp shade consists of smoke colored and translucent, rumpled mesh material which rises from a short wooden stand and creates the impression of smoke rising from a burning log. The smoke colored mesh material of the lamp shade, in combination with the log-like wooden stand, represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 10). The presentation of the Park Avenue Property  featuring the Meshu Floor Lamp is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates the original artistic creation (*see* Exhibit 3).

30.    The inherently distinctive Shimne Vase is comprised of a rectangular wooden block which is formed to look like a vertically long cross-section of a thin tree and features tree bark coating on some sides and splintered wood on others. The vase's tree bark and splintered wood siding represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 11). The presentation of the Park Avenue Property  featuring the Shimne Vase is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates  the original artistic creation (*see* Exhibit 3).

31.    The inherently distinctive Sylvan Floor Lamp is comprised of a horizontal lying rectangular wooden stand, composed of unfinished splintered wood which is reminiscent of a whittled log, and which features five thin, glass lamps with bulbous tops jutting straight up from the wooden stand. The unfinished, log-like wooden stand and the extremely thin lamp necks, which serve to accentuate the wooden stand while mitigating the impact of the glass material,

represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 12). The presentation of the Park Avenue Property featuring the Sylvan Floor Lamp is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates the original artistic creation (*see* Exhibit 5).

32.     The inherently distinctive Yasu Floor Lamp is a long, vertical lamp comprised of a splintered and unfinished block wooden stand and a long, rectangular lamp shade composed of thin, paper-like material. The splintered and unfinished block wooden stand and "thin crumpled paper" look of the lampshade represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 13). The presentation of the Park Avenue Property featuring the Yasu Floor Lamp is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates the original artistic creation  (*see* Exhibit 3).

33.     The inherently distinctive Z-Stool is a stool composed of flat wooden panels which connect to form a horizontal top, diagonal leg, and horizontal base, respectively, and create a letter Z figure when viewed from the side. The granulated wood material of the chair's respective pieces and the minimalist Z-letter shape represent non-functional artistic elements which are distinctive of the ANDRÉ JOYAU "modern repurposed" style (*see* Exhibit 14). The presentation of the Park Avenue Property featuring the Z-stool is likely to confuse the public into thinking there is an association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof substantially misappropriates the original artistic creation The  (*see* Exhibit 6).

34.     The inherently distinctive Tate Chaise is a long chaise composed of a single flat

wooden panel which forms the seat, three flat wooden panels which form the backs and side arm

respectively, and which sits on two unfinished and hollow wooden blocks which act as legs for

the piece. The minimalistic wood panel style, comprised of back and arm pieces which are

disconnected and arranged at a distance from one another, as well as the unfinished and hollow

wooden "legs" represent non-functional artistic elements which are distinctive of the ANDRÉ

JOYAU "modern repurposed" style (*see* Exhibit 15). The presentation of the Park Avenue

Property  featuring the Tate Chaise is likely to confuse the public into thinking there is an

association with ANDRÉ JOYAU, because Defendants' infringing recreation thereof

substantially misappropriates the original artistic creation (*see* Exhibit 6).

      35.    Core's virtual Sales Presentation, which was used to market its real-estate listing,

represents a use in commerce of virtual furniture constructs which constitute or are confusingly

similar to the ANDRÉ JOYAU collection, and which are, upon information and belief, recreated

directly from the ANDRÉ JOYAU collection in its entirety. Core's virtual Sales Presentation

created identical copies of each inherently distinctive ANDRÉ JOYAU furniture item and,

therefore, constitutes nine separate acts of infringement against each of the nine separate items'

inherently distinctive trade dresses, which are associated with Heptagon. Core's infringing acts

are intended to divert business from Heptagon as they are likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of Core and its real-estate

listings with Heptagon, or as to the origin, sponsorship, or approval of Core's goods, services, or

commercial activities with Heptagon in violation of 15 USC § 1125(a) (§ 43(a) of the Lanham

Act). Core's virtual Sales Presentation resulted in the unjust enrichment of Core on account of the

affiliation they connected between Core and ANDRÉ JOYAU and its artistic creations and

12

design services.

36.     Pleskow and Rael's virtual recreation of the ANDRÉ JOYAU collection for Core's virtual Sales Presentation represents a use in commerce of virtual furniture constructs which are or are confusingly similar to the ANDRÉ JOYAU collection, and which are believed to be recreated directly from the ANDRÉ JOYAU collection in its entirety. Pleskow and Rael's virtual Sales Presentation created identical copies of each inherently distinctive ANDRÉ JOYAU furniture item and, therefore, constitutes nine separate acts of unfair competition and infringement of each of the nine separate items' inherently distinctive trade dresses. Pleskow and Rael's infringing acts are intended to divert business from Heptagon as they are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Pleskow and Rael's interior design services with Heptagon, or as to the origin, sponsorship, or approval of Pleskow and Rael's goods, services, or commercial activities with Heptagon in violation of 15 USC § 1125(a) (§ 43(a) of the Lanham Act).

37.     As a direct and proximate result of Core's unfair competition and misappropriation of Heptagon's distinctive trade dress, Core has been unjustly enriched and Heptagon has suffered and continues to suffer damages and losses to its profits, sales, and business. Indeed, Core's unjust enrichment is admitted by Core throughout the HGTV episode, which made the following statements:

        a.      "The design presentation allowed us to show the potential of this apartment... without wasting any money along the way." (Admission by Graves.)

        b.      "[The Sales Presentation]...showed what this penthouse could be." (Admission by Osher.)

13

Moreover, the misappropriation and unfair competition alleged herein above resulted in the subject sale and income to Core amounting, upon information and belief, to $353,400. Core would not have earned this income but for the subject misappropriation and unfair competition complained of herein, as has been admitted by Mr. Graves:

       c.     "The design presentation allowed us to show the potential of this property, so my buyer, who was on the fence, sealed the deal." (Admitted by Graves.)

38.    Upon information and belief, Core's complained of actions and the highly public HGTV airing of such actions also enables Core to obtain additional business and use the goodwill associated with the ANDRÉ JOYAU furniture collection to increase sales of its other real-estate listings, and Core is unjustly enriched by such sales of its other listings. The fact that Core expects to increase sales of its other real-estate listings by virtue of its unfair competition and infringement of Heptagon's rights is apparent from the fact that Core's website is replete with promotional references to the HGTV Episode.

39.    As a direct and proximate result of Pleskow and Rael's unfair competition with Heptagon's distinctive trade dress and interior design services, Pleskow and Rael have been unjustly enriched and Heptagon has suffered and continues to suffer damages and losses to its profits, sales, and business. Upon information and belief, Pleskow and Rael's actions and the highly public HGTV airing of such actions have created an association between Pleskow and Rael and ANDRÉ JOYAU and enables Pleskow and Rael to use the goodwill associated with the ANDRÉ JOYAU furniture collection to increase sales of their interior decorating, virtual design, and architectural design services, and Pleskow and Rael are unjustly enriched by such sales of their other goods and services.

40.     There is no question that all named defendants had notice of Heptagon's inherently distinctive and famous trade dress because such named defendants had, prior to committing their infringing acts, approached Heptagon for the purposes of securing Heptagon's consent to lend its goodwill and intellectual property to the defendants' project.

## COUNT TWO

## COMMON LAW UNFAIR COMPETITION

41.     As a cause of action and ground for relief, Heptagon alleges and incorporates by reference Paragraphs 1 through 40 of this Complaint as a part of this Count.

42.     The infringing actions of all named defendants, which unfairly utilized Heptagon's hard work and attendant goodwill to unjustly enrich the defendants, constitutes common law unfair competition. Such unfair competition has caused damage to Heptagon's reputation, goodwill, and has unfairly begrudged Heptagon of the ability to exploit its products and services in the field of interior design and decorating for real-estate sales. Moreover, defendants' infringing actions were made in bad faith because defendants knew or should have known that the wholesale copying of Heptagon's property was illegal under the relevant state and federal laws.

## COUNT THREE

## COPYRIGHT INFRINGEMENT

43.     As a cause of action and ground for relief, Heptagon alleges and incorporates by reference Paragraphs 1 through 42 of this Complaint as a part of this Count.

44.     The named defendants' virtual Sales Presentation comprises material which originated with or was, in violation of Heptagon's rights, copied from Heptagon. Such material is

15

copyrightable subject matter under 17 U.S.C. §101 *et seq.* of the Copyright Act of 1976.

45.     Heptagon is the owner of the exclusive rights to the copyrightable material and the privileges in and to the ANDRÉ JOYAU furniture collection.

46.     Heptagon filed a copyright registration pertaining to the ANDRÉ JOYAU furniture collection. This registration is identified as follows:  Case # 1-576740341 (Filed March 4, 2011).

47.     On April 8, 2011 Heptagon received a letter from the U.S. Copyright Office informing Heptagon of the Office's rejection of Heptagon's copyright registration application on the basis of functionality, contending that the objects are utilitarian and contain no separable authorship.

48.     On May 10, 2011 Heptagon appealed to the U.S. Copyright Office for a reconsideration of its rejection on the basis that every piece in the ANDRÉ JOYAU furniture collection bears expressive design features which are separable works of authorship from the items' functional properties.

49.     Specifically, it is clear that the ANDRÉ JOYAU furniture and furnishing designs comprise separable works of authorship capable of sustaining copyright registration.

        a.      The function of the Cocoon Chair is to support a person while sitting. This function is provided by the seat and back portion of the chair and the top surfaces of the armrests. The sculptured shape of the arcuate portions of the outside of a tree are exactly the sort of thing recognized as a separable sculptural work. *See Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). See also* Copyright Office, *Compendium II of Copyright Office Practices* § 505.03 (1984) (recognizing that a "carving on the back of a chair, or pictorial matter engraved on

16

a glass vase, could be considered for [copyright] registration" on the basis of separability). The armrests are supported by the arcuate sculptural form which forms both of them. In this respect, the arcuate shapes are exactly the analog of this sculptural base of the lamp in *Mazer.*

        b.      Likewise, the Cross Table has a depiction of a cross and four circles in the four quadrants created thereby as a design in its top. These designs are capable of being drawn and existing independently of the table. The functionality of a table is to support things. This functionality is completely unaffected by the cross and circles depiction. Accordingly, substantial non-functional elements appear in the Cross Table. Registration of the same, even standing alone is appropriate.

        c.      The Form Table comprises a top depicting the design of a crescent which mates with a circle. Circular wood grain patterns enhance the effect. In the center, the wood grain patterns are complete circles, but on the periphery they are broken circles in the crescent shape portion of the design. The function of the table is to support things and the crescent and circle design has no affect on the functionality of the same. Likewise, the irregular roughly cylindrical sides of the table are completely nonfunctional.

        d.      The Shimne Vase has irregular dark sides and regular light colored sides. The angles between the dark and light sides are not right angles. The function of a vase is to contain. The angular orientation and color of the sides does not affect functionality. Even separately, the Shimne Vase is clearly copyrightable subject matter.

        e.      The Sylvan Floor Lamp has a completely nonfunctional rectangle or silvery bar. The function of a lamp is to produce light. Such functionality is not affected by the silvery bar. Accordingly, the Sylvan Floor Lamp constitutes copyrightable subject matter.

17

f.     The Tate Chaise is a sofa whose function is to support a number of people while they are sitting. This function is completely unaffected by the hollowness of the supports and the orientation of wood grain stripes on the same.

g.     The Yasu Floor Lamp has the function of providing illumination. That function is completely unaffected by the use of wrinkled shade material. The same renders the design copyrightable.

h.     The two Z Stool designs have the function of supporting a person in the sitting position. Both designs have two legs and a board support. The board support has a completely nonfunctional central portion which is strictly a decorative feature of the chair design. In addition, the use of the particular angle of cut, between 1) the board support and 2) the board forming the top surface of the seat, results in a graphic design of an array of elongated chevrons in the side view of the two boards.

50.     Every one of the foregoing features could be removed from the perspective designs without affecting the functionality of the product in the slightest. They can be visualized separately, and are thus clearly separable. Clearly, the addition of these features to the furnishings at issue was not motivated by a desire to enhance functionality *qua* furniture and furnishings, and this fact further militates in favor of the issuance of a copyright registration. *See Chosun International, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324 (2d Cir. 2005). Likewise, the subject design elements support issuance of a copyright registration because the same can be "conceptualized as existing independently of their utilitarian function," *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411 at 418 (2d Cir. 1985), and are eligible for copyright protection.

18

51.     Heptagon owns the copyright in the foregoing designs of the ANDRÉ JOYAU furniture collection.

52.     Defendants' virtual Sales Presentation contains original creative copyrightable elements copied from or derived from Heptagon's copyrighted ANDRÉ JOYAU furniture collection to which Heptagon owns exclusive copyrights.

53.     Upon information and belief, the virtual 3D furniture constructs in the virtual Sales Presentation copy and are substantially similar in look and feel to Heptagon's original ANDRÉ JOYAU furniture collection by incorporating comprehensively copyright protectable and therefore copyrighted elements of the ANDRÉ JOYAU furniture collection.

54.     The named defendants had access to Heptagon's ANDRÉ JOYAU furniture collection by virtue of the fact that the ANDRÉ JOYAU furniture collection is well publicized in various media, the fact that the named defendants originally approached Heptagon to use its ANDRÉ JOYAU furniture collection for their HGTV project, and the fact that defendants were provided with photographs of the ANDRÉ JOYAU furniture collection prior to such time as defendants created their infringing virtual Sales Presentation.

55.     The aforementioned activities of the defendants violate the rights of Heptagon under 17 U.S.C. § 101 *et seq*.

56.     As a direct and proximate result of these acts of copyright infringement by the defendants, (1) the defendants have been and will continue to be unjustly enriched, both on account of sales of the Park Avenue Property and, (2) the diversion of customers to themselves for their other sales and decorating services. Heptagon has sustained and will continue to sustain irreparable damage and injury to its business in the sale of its interior design and decorating

19

services, goodwill, reputation and profits, in an amount not presently known.

57. By reason of the acts of the defendants herein alleged, Heptagon has been damaged and, unless restrained, the defendants have and will continue to divert business from Heptagon, be unjustly enriched, deceive the public, impair the value of Heptagon's products and otherwise will cause Heptagon immediate and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Heptagon prays:

1. For a preliminary and permanent injunction restraining all named defendants, their agents, servants, employees, successors, assigns and those in privity and/or concert with them from (1) using virtual images or any images of the ANDRÉ JOYAU furniture collection in connection with interior decorating, design, furniture sales and real-estate sales, and (2) otherwise infringing Heptagon's rights in the ANDRÉ JOYAU furniture collection in catalogs, on the Internet, on television or otherwise.

2. That Core pay to Heptagon, an amount to be determined at trial but no less than the sum of its total commission on the sale of the Park Avenue Property, which represents Core's unjust enrichment for (1) unfair competition and (2) infringement of Heptagon's furniture trade dress.

3. That Pleskow and Rael pay to Heptagon, an amount to be determined at trial but no less than the sum of their total compensation for their work in connection with Core's virtual Sales Presentation, which represents Pleskow and Rael's unjust enrichment for (1) unfair competition and (2) infringement of Heptagon's furniture trade dress.

4. That all named defendants pay to Heptagon, an amount to be determined at trial,

20

which represents defendants' unjust enrichment for sales of their goods and services resulting from the fame and goodwill gained by publically exploiting Heptagon's goodwill and reputation in the ANDRÉ JOYAU furniture trade dress.

     5.     That all named defendants pay to Heptagon, an amount to be determined at trial, representing punitive damages for defendants' gross and willful disregard of Heptagon's economic and intellectual property rights.

     6.     That all named defendants pay to Heptagon its reasonable attorneys' fees and the costs of this action.

     7.     That this Court order such other relief as it may deem just.

Dated:  June 10, 2011     By:

                        _____
                        Tim Bukher, Esq. (TB1984)
                        Anthony H. Handal, Esq. (AH5104)
                        Handal & Morofsky, LLC
                        420 Lexington Avenue, Suite 300
                        New York, NY 10170
                        (646) 770-1010

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Heptagon Creations, Ltd. hereby

demands a jury trial of any issues in this action so triable.

Dated:  June 10, 2011          By:

_____
Tim Bukher, Esq. (TB1984)
Handal & Morofsky, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(646) 770-1010

22